1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL W. RANNELS,                    Case No. 1:21-cv-00049-KES-SKO (PC)

12                    Plaintiff,           **FINDINGS AND RECOMMENDATIONS
                                           TO GRANT DEFENDANTS' MOTION
13          v.                             FOR SUMMARY JUDGMENT**

14   SMITH, et al.,                        (Doc. 52)

15                    Defendants.          **14-DAY OBJECTION PERIOD**

16

17          Plaintiff Daniel W. Rannels is proceeding pro se in this civil rights action brought

18   pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's Eighth Amendment deliberate

19   indifference to serious medical needs claims against Defendants Smith and Tortorice. (*See* Doc.

20   48.)

21          **I.      INTRODUCTION**

22          Defendants filed a summary judgment motion on August 21, 2024. (Doc. 52.)  On August

23   29, 2024, Defendants filed a "Motion to Stay Discovery and to Modify the Discovery and

24   Scheduling Order." (Doc. 53.) Defendants filed a reply on October 3, 2024. (Doc. 59.)

25          On September 20, 2024, Plaintiff filed a document titled "Motion to the Court to Set Trial

26   Date to Oppose Declaration of Howard E. Mosley to Prove Summary Judgment (Exhaustion)."

27   (Doc. 54.) That same date, Plaintiff filed a document titled "Plaintiff's Respond Motion for the

28   Court to Proceed with Trial by Jury to Present Factual Evidence that Proves All Exhaustion(s);

1    Have Been Lawfully Secured" (Doc. 55) and a document titled "Plaintiff Response to Rand

2    Warning Regarding Opposing Summary Judgment" (Doc. 56).

3          On September 25, 2024, Plaintiff filed a document titled "Plaintiff's Notice Opposing

4    Motion to Stay Discovery and to Modify the Discovery and Scheduling Order." (Doc. 57.)

5          On October 1, 2024, this Court issued its Order Granting Defendants' Motion To Stay and

6    Order Denying Plaintiff's Motions Filed September 20, 2024. (Doc. 58.)

7          **II.    PLAINTIFF'S SECOND AMENDED COMPLAINT**

8          In his second amended complaint, Plaintiff alleges Defendant Smith refused to order

9    testing that would have provided Smith with medical information necessary to treat Plaintiff's

10   condition. Plaintiff contends Smith believed Plaintiff was "seeking to be prescripted a pain

11   medication for enebreation purposes only" and that Plaintiff did not have a "chronic pain medical

12   condition." Smith refused to provide adequate pain medication and refused to refer Plaintiff to a

13   pain management specialist, causing Plaintiff further harm. Plaintiff further alleges Defendant

14   Tortorice believed Plaintiff was "seeking to be intoxicated." Despite being advised Plaintiff had

15   received prior pain management treatment, Defendant Tortorice refused to refer Plaintiff to a pain

16   management specialist, or to provide adequate pain medication or treatment, causing Plaintiff

17   further harm. (*See* Doc. 32 at 3-4.)

18         **III.   SUMMARY OF THE PARTIES' BRIEFING**

19         ***Defendants' Motion for Summary Judgment (Doc. 52)***

20         Defendants allege Plaintiff has failed to exhaust his deliberate indifference claims against

21   Defendant Smith and Tortorice. Defendants contend the relevant grievances did not exhaust

22   Plaintiff's claims against Defendants because those grievances do not identify Defendants Smith

23   and Tortorice and therefore failed to provide notice and/or did not involve headquarters level

24   review.

25         ***Plaintiff's Opposition***

26         Plaintiff did not file an opposition to Defendants' summary judgment motion; however,

27   the Court considered the substance of his subsequently filed pleadings. In his pleading filed

28   September 20, 2024, the title of the document reflects Plaintiff's opposition to the Declaration of

1    Howard E. Moseley, filed in support of Defendants' pending motion. (*See* Doc. 54.) That same

2    date, Plaintiff filed a document stating he "demands the request to present the proof of evidence

3    to insure facts," construed to be a request for an evidentiary hearing concerning exhaustion of

4    administrative remedies. (*See* Doc. 55.)

5                    ***Defendants' Reply (Doc. 59)***

6        Defendants contend Plaintiff has failed to rebut the evidence submitted in support of the

7    summary judgment motion, has failed to respond to or dispute any material facts, and has not

8    shown the grievance process was unavailable to him.

9        **IV.    LEGAL STANDARDS**

10            **A.  Summary Judgment**

11        Summary judgment is appropriate when the moving party "shows that there is no genuine

12    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

13    Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine

14    issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

15    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by

16    "citing to particular parts of materials in the record, including depositions, documents,

17    electronically stored information, affidavits or declarations, stipulations …, admissions,

18    interrogatory answers, or other materials," or by showing that such materials "do not establish the

19    absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

20    evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears

21    the burden of proof at trial, "the moving party need only prove that there is an absence of

22    evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*,

23    477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

24        Summary judgment should be entered against a party who fails to make a showing

25    sufficient to establish the existence of an element essential to that party's case, and on which that

26    party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

27    proof concerning an essential element of the nonmoving party's case necessarily renders all other

28    facts immaterial." *Id.* at 322-23. In such a circumstance, summary judgment should be granted,

1   "so long as whatever is before the district court demonstrates that the standard for the entry of

2   summary judgment … is satisfied." *Id.* at 323.

3   **B.  Exhaustion of Administrative Remedies**

4   The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with

5   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

6   confined in any jail, prison, or other correctional facility until such administrative remedies as are

7   available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is

8   mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199,

9   211 (2007). Inmates are required to "complete the administrative review process in accordance

10  with the applicable procedural rules, including deadlines, as a precondition to bringing suit in

11  federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

12  The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v.*

13  *Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the

14  administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

15  The failure to exhaust administrative remedies is an affirmative defense, which the

16  defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of

17  producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if

18  the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff

19  failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

20  On a motion for summary judgment, the defendant must prove (1) the existence of an

21  available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. *Albino*,

22  747 F.3d at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the

23  burden of production. That is, the burden shifts to the prisoner to come forward with evidence

24  showing that there is something in his particular case that made the existing and generally

25  available administrative remedies effectively unavailable to him." *Id.* (citation omitted).

26  "However, … the ultimate burden of proof remains with the defendant." *Id.*

27  An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642

28  (2016). An administrative remedy is unavailable "when (despite what regulations or guidance

4

1    materials may promise) it operates as a simple dead end with officers unable or consistently

2    unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so

3    opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to

4    provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when

5    prison administrators thwart inmates from taking advantage of a grievance process through

6    machination, misrepresentation, or intimidation." *Id*. at 643-44.

7        When the district court concludes that the prisoner has not exhausted administrative

8    remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v.*

9    *Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by

10    *Albino*, 747 F.3d at 1168-69.

11        "If a motion for summary judgment is denied, disputed factual questions relevant to

12    exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that

13    remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust

14    available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

15              **C.  CDCR Grievance Process**

16        The California Department of Corrections and Rehabilitation ("CDCR") has an

17    administrative grievance system for prisoners to appeal a policy, decision, action, condition, or

18    omission by the department or staff if it has an adverse effect on prisoner health, safety, or

19    welfare. Cal. Code Regs. tit. 15, §§ 3084.1(a) (2018), 3999.226(a). Compliance with 42 U.S.C. §

20    1997e(a) requires California-state prisoners to utilize CDCR's grievance process to exhaust their

21    claims prior to filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see*

22    *also Woodford*, 548 U.S. at 85-86. Administrative appeals are generally subject to two to three

23    levels of review before the remedy is deemed exhausted. Cal. Code Regs. tit. 15, §§ 3084-3085,

24    3480-3487, 3999.225-3999.237; *see also Sapp*, 623 F.3d at 818.

25              **V.    EVIDENTIARY MATTERS**

26        Plaintiff has failed to properly respond to Defendants' Statement of Undisputed Facts in

27    support of the motion for summary judgment. Plaintiff was served with a *Rand*[1] warning that

28    _____

[1] *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

included the following language:

> In accordance with Local Rule 260(a), Defendants have filed a Statement of Undisputed Facts that contains discrete, specific material facts to support their entitlement to summary judgment. In response to this Statement, Local Rule 260(b) requires you to "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." You may also "file a concise Statement of Disputed Facts, and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication." *Id*. You are responsible for filing all evidentiary documents cited in the opposing papers. *Id*.

(Doc. 52-1 at 3.) Plaintiff neither reproduced Defendants' itemized facts, nor admitted or denied those facts. Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts. *See, e.g*., *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply with Local Rule 260(b)); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## VI.   DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. Plaintiff Daniel Wayne Rannels is an incarcerated person in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and at all times relevant to the Second Amended Complaint ("SAC") was incarcerated at the Sierra Conservation Center ("SCC").

2. Plaintiff was first transferred to the SCC on June 7, 2018.

3. At all times relevant to the SAC, Defendants Dr. Smith and Dr. Tortorice were employed as medical doctors at the SCC.

4. Plaintiff filed his operative SAC on June 22, 2023.

5. In his SAC, Plaintiff alleges that he has chronic pain related to a sciatic nerve condition and spinal damage.

6. In his SAC, Plaintiff alleges that, on an unspecified date, he informed Dr. Smith that he had previously received treatment from a pain management specialist that provided

him with relief. Instead of evaluating Plaintiff's condition, Dr. Smith allegedly suggested that Plaintiff only sought pain medication to be inebriated.

7. In his SAC, Plaintiff alleges that Dr. Smith refused to provide him with adequate pain medication and refer him to a pain management specialist, which caused Plaintiff's pain to worsen.

8. In his SAC, Plaintiff alleges that, on an unspecified date, and despite knowing that Plaintiff had received care from a pain management specialist before arriving at the SCC, Dr. Tortorice refused to provide Plaintiff with adequate pain medication or treatment and refer Plaintiff to a pain management specialist.

9. The Court screened the SAC under 28 U.S.C. § 1915A(a) and found that, when liberally construed, it alleged a cognizable Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Smith and Dr. Tortorice.

10. In the SAC, Plaintiff checked the boxes acknowledging his awareness of the administrative grievance procedure.

11. In the SAC, Plaintiff represented that he filed an appeal or grievance concerning all of the facts in the SAC. Plaintiff did not claim that he was unable to present his claims in the SAC for review through the SCC's grievance procedure.

12. Since August 1, 2008, health care appeals/grievances involving inmate medical, dental, and mental health care issues have been processed by California Correctional Health Care Services ("CCHCS"), under the Office of the Federal Receiver appointed in the class action litigation regarding prison health care, *Plata v. Newsom*, Case No. 3:01-cv-01351 (N.D. Cal.).

13. The Health Care Correspondence and Appeals Branch ("HCCAB") receives, reviews, and maintains all health care appeals/grievances accepted for the final (headquarters) level review in the inmate health care appeal/grievance process, and renders decisions on such appeals/grievances.

14. Since September 1, 2017, health care grievances have been subject to two levels of administrative review—an institutional level of review and a headquarters level of review.

15. Disposition at the headquarters level of review is required before an inmate health care grievance may be deemed exhausted.

16. All levels of health care appeals/grievances, including the institutional and headquarters levels of review, are tracked through a computer database known as the Health Care Appeals and Risk Tracking System ("HCARTS").

17. HCARTS also tracks health care appeals/grievances that were received and ultimately rejected and the reason for that rejection.

18. Title 15 of the California Code of Regulations governs the inmate appeal/grievance process for non-health care issues.

19. A decision from the Office of the Appeals ("OOA") represents the final level of review in CDCR's grievance and appeal process for nonhealth care related issues.

20. Plaintiff's Appeal History Report, for nonhealth care grievances filed before June 1, 2020, and non-health care grievances filed on or after June 1, 2020, shows that Plaintiff submitted ten (10) non-health care grievances to the OOA between June 7, 2018, and June 22, 2023 (the "Relevant Period").

21. None of Plaintiff's non-health care grievances submitted to the OOA during the Relevant Period identify Dr. Smith and/or Dr. Tortorice by name, or otherwise allege that these Defendants refused to provide Plaintiff with adequate pain medication and refer Plaintiff to a pain management specialist.

22. Had Plaintiff complained about medical treatment related to alleged pain management needs in a non-health care grievance, it would have been treated as a health care related claim and redirected for handling by the HCCAB.

23. Plaintiff did not submit an inmate health care appeal for headquarters' level review involving allegations that Defendants failed to provide Plaintiff with adequate pain management or a referral to a pain management specialist.

24. Plaintiff's HCARTS reflects that he submitted nine (9) health care grievances arising from the provision of medical care to Plaintiff at the SCC during the Relevant Period: (1) SCC HC 18000361; (2) SCC HC 19000033; (3) SCC HC 19000040; (4) SCC HC 20000170; (5) SCC HC 20000272; (6) SCC HC 20000169; (7) SCC HC 20000229; (8) SCC HC 21000069; and (9) SCC HC 21000593.

25. Only SCC HC 20000169 and SCC HC 20000229 were submitted to the second level for headquarters' review during the Relevant Period.

26. In health care grievance tracking number SCC HC 20000169, Plaintiff raised concerns regarding CDCR's response to the COVID-19 pandemic. Plaintiff requested to be given the COVID-19 vaccine and sought immediate release from custody. This health care grievance did not identify either Dr. Smith or Dr. Tortorice by name.

27. The institutional level response to SCC HC 20000169 indicated that no intervention was warranted. The HCCAB upheld the institutional level decision on November 17, 2020, and closed SCC HC 20000169 with no intervention.

28. In health care grievance tracking number SCC HC 20000229, Plaintiff expressed his dissatisfaction with the Reasonable Accommodation Panel's ("RAP") decision to deny his request for therapeutic shoes. Plaintiff complained that he had "unbearable foot pain" and disagreed "with the doctor's diagnoses and the denial of [his] A.D.A. accommodations." As for relief, Plaintiff requested to be seen by a foot specialist as soon as possible. This health care grievance did not identify either Dr. Smith or Dr. Tortorice by name.

8

29. The institutional level response to SCC HC 20000229 indicated that no intervention was warranted, on the grounds that Plaintiff did not meet the criteria for therapeutic shoes or for a referral to a foot specialist at that time.

30. Plaintiff submitted SCC HC 20000229 for headquarters review, which the HCCAB received on September 10, 2020. The HCCAB upheld the institutional level decision on December 8, 2020, and closed SCC HC 20000229 with no intervention.

31. When evaluating and considering SCC HC 20000229 on appeal review, the HCCAB focused on Plaintiff's disagreement with the RAP's decision, whether it was proper to deny Plaintiff's request for therapeutic shoes, and whether a podiatry referral was medically necessary. The HCCAB did not have an understanding that Plaintiff grieved any pain management decisions by Defendants in SCC HC 20000229.

32. At the headquarters' level of review for SCC HC 20000229, the HCCAB also explained that Plaintiff's new issue regarding magnetic resonance imaging ("M.R.I."), which Plaintiff raised for the first time in his health care appeal of SCC HC 20000229, went beyond the initial issues and would not be addressed at the headquarters' level of review.

33. Only health care grievances SCC HC 18000361, SCC HC 19000033, SCC HC 19000040, and SCC HC 21000593 potentially relate to Plaintiff's claim that he received inadequate pain medication and/or failed to be referred to a pain management specialist while at the SCC.

34. Plaintiff submitted health care grievance tracking number SCC HC 18000361 on July 21, 2018.

35. In SCC HC 18000361, Plaintiff generally complained that he did not agree with Dr. Smith's "analysis and order." Plaintiff averred that he needed medical attention, due to unbearable pain. This health care grievance did not identify Dr. Tortorice by name.

36. As for relief, SCC HC 18000361 sought a follow up pain management appointment so that he could be given "the necessary treatment." Plaintiff also requested that his pain management issues be immediately addressed by a "professional specialist."

37. The institutional level disposition for SCC HC 18000361, signed on September 14, 2018, granted intervention.

38. The basis for the institutional level disposition for SCC HC 18000361 was that Plaintiff had been referred to physical therapy and would receive Naprosyn after his prescription for Prednisone ended. The institutional level response further indicated that Plaintiff would have a follow up visit with his primary care physician after he completed physical therapy.

39. The institutional level response for SCC HC 18000361 advised that if Plaintiff was "dissatisfied with the Institutional Level Response, explain the reason in Section C of the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for headquarters' level review. The headquarters' level review

9

constitutes the final disposition on your health care grievance and exhausts your administrative remedies."

40. Plaintiff did not submit SCC HC 18000361 for headquarters' level review.

41. On January 28, 2019, Plaintiff submitted health care grievance tracking number SCC HC 19000033.

42. In this health care grievance, Plaintiff complained that he suffered from "chronic and substantial" back, knee, and hip pain. Plaintiff cited to a "breakdown in the relationship" between him and an unidentified nurse practitioner ("NP"), which had prevented "the correct treatment and pain [management]/medication for [Plaintiff's] maladies." This health care grievance did not identify either Dr. Smith or Dr. Tortorice by name.

43. The relief Plaintiff requested in SCC HC 19000033 was to consult with a doctor regarding "an alternative and effective pain medication" and requested certain treatments for eczema. Plaintiff also requested "the correct treatment and pain [management]/medication" for his chronic back pain.

44. SCC HC 19000033 was rejected at the institutional level of review on January 30, 2019. The corresponding rejection notice advised that SCC HC 19000033 contained a "general allegation," as there was no NP employed at SCC. The rejection notice also indicated that Plaintiff would need to file a new CDCR 602 HC form to "describe the specific complaint" that related to his health care which he believed had a material adverse effect on his health or welfare.

45. SCC HC 19000033 did not receive a response on the merits, and Plaintiff did not submit SCC HC 19000033 for headquarters' level review.

46. Plaintiff filed health care grievance tracking number SCC HC 19000040 on February 4, 2019.

47. In SCC HC 19000040, Plaintiff complained of "direct evidence of deliberate indifference." Plaintiff alleged that "Dr. McKay stipulate[d] there's nothing she can do and [Defendant] Smith as well." Plaintiff did not identify Dr. Tortorice by name in this health care grievance.

48. The relief Plaintiff requested in SCC HC 19000040 was to consult with a pain management doctor. Alternatively, Plaintiff requested to be seen by someone who could provide him with "adequate treatment or an alternative and effective pain medication or surgery or the treatment that help[s] to make my pain bearable because as of now its unbearable and needs immediate attention."

49. The Institutional Level Response to SCC HC 19000040, issued on April 9, 2019, indicated that no intervention was warranted. The institutional level response also advised that if Plaintiff was "dissatisfied with the Institutional Level Response … [to] submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care

grievance and exhausts your administrative remedies."

50. Plaintiff did not submit SCC HC 19000040 for headquarters' level review.

51. Plaintiff submitted health care grievance tracking number SCC HC 210005931 on November 3, 2021.

52. In SCC HC 21000593, Plaintiff complained that an outside pain management specialist had failed to examine him. Plaintiff alleged that the pain management specialist had relied on an outdated M.R.I., and ultimately recommended ineffective treatment. Plaintiff further averred that he had been "asking for help and adequate treatment for four year[s]" to no avail. This health care grievance did not identify either Dr. Smith or Dr. Tortorice by name.

53. The relief Plaintiff requested in SCC HC 21000593 was a second opinion from another pain management specialist.

54. The Institutional Level Response to SCC HC 21000593, signed on January 13, 2022, indicated that no intervention was warranted. The institutional level response also advised that if Plaintiff was "dissatisfied with the Institutional Level Response … [to] submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies."

55. Plaintiff did not submit SCC HC 21000593 for headquarters' level review.

(*See* Doc. 52-2 [hereafter "UDF"].)

## VII.    DISCUSSION

The Court must determine whether Plaintiff exhausted his administrative remedies regarding his claims of deliberate indifference to serious medical needs against Defendants Smith and Tortorice.

Here, the relevant time period involves June 7, 2018 (the date that Plaintiff was first transferred to SCC) through June 22, 2023 (the date that Plaintiff filed the operative complaint). Plaintiff submitted nine health care grievances during that period. (UDF 25.)  For ease of reference, the Court will refer to the relevant grievance/appeal by its numerical portion only. The Court's focus involves the following grievances relevant to Plaintiff's claims here: 18000361, 19000033, 19000040, 20000229, and 21000593.[2]

---

[2] The Court has reviewed the declarations of Howard E. Moseley (Doc. 52-3) and S. Gates (Doc. 52-4), including the attached exhibits. To the extent any grievance is not discussed herein, unaddressed grievances are deemed to be unrelated to Plaintiff's claims in this action. The unrelated grievances include

11

18000361

This grievance, (*see* Doc. 52-4 at 17-24 [Exhibit B]), reads as follows:

> I don't agree with Dr. Smith's analysis and order. He is very incorrect, and [I] need the medical attention that is required. I'm in way [too] much pain, extremely unbearable pain and need a follow up pain management appointment to be [given] the necessary treatment to help[] the excruciating pain be dealt with [by] a professional specialist immediately please. Your prompt attention will be highly appreciated.

(Doc. 52-4 at 20, punctuation added.) The institutional response, dated September 20, 2018, notes that Plaintiff's "health care grievance package and health record" were reviewed and records the basis for intervention:

> That you have been referred to Physical Therapy (PT). Dr. Thomatos [health care grievance interviewer] discussed the risk of a seizure with the Wellbutrin and prednisone together. You have decided that you would rather try the prednisone. After the prednisone ends you will be started on Naprosyn. You will have a follow up with your Primary Care Physician after you complete PT.

(*Id*.) On the following page, Plaintiff was advised: "If you are dissatisfied with the Institutional Level Response, explain the reason in Section C of the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies." (*Id*. at 24.)

Defendants contend Plaintiff "generally complained that he did not agree with Dr. Smith's 'analysis and order,'" and stated he needed medical attention to address his pain. UDF 35. Plaintiff "sought a follow up appointment so he could be given 'the necessary treatment'" and asked that pain management "be immediately addressed by a 'professional specialist.'" UDF 36. At the institutional level, intervention was granted on September 14, 2018. UDF 37. Defendants contend the institutional disposition was based on Plaintiff's referral to physical therapy and because he "would receive Naprosyn after his prescription for Prednisone ended" and would receive a follow up visit with his primary care physician after physical therapy was completed.

---

complaints about COVID-19 protocols and CDCR's overall response to the pandemic, missing mail, requests for expedited release, a request for the COVID-19 vaccine, an inadequate warning prior to issuance of a counseling chrono, and good conduct and other credit calculation errors.

1  UDF 38. Defendants further contend that because Plaintiff did not seek headquarters review of

2  the institutional level response, the claim is unexhausted. UDF 39-40.

3      As an initial matter, the Court finds that Plaintiff sufficiently identified Defendant Smith

4  in this grievance, alerting prison officials to his claim. *See Sapp*, 623 F.3d at 824 ("A grievance

5  suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the

6  prisoner seeks redress"); *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("a grievance

7  suffices if it alerts the prison to the nature of the wrong for which redress is sought"). However,

8  this grievance does not identify Defendant Tortorice in any way.

9      Although Defendant Smith was identified in this grievance, Plaintiff did not appeal its

10 outcome at the headquarters level. Plaintiff initially complained about Defendant Smith's

11 purported failures, including the refusal to refer him to a pain management specialist. The

12 intervention granted at the institutional level addressed physical therapy, a prescription for

13 Prednisone, and provided for follow up with his primary after physical therapy was completed. It

14 did not address Plaintiff's request to be seen by a "professional specialist." And as noted above,

15 after intervention at the institutional level, Plaintiff failed to appeal to the headquarters level.

16 *Jones*, 549 U.S. 211; *Woodford*, 548 U.S. at 88, 93. Therefore, the Court finds grievance

17 18000361 does not exhaust Plaintiff's administrative remedies concerning his claims against

18 Smith or Tortorice.

19     19000033

20     This grievance, (*see* Doc. 52-4 at 25-32 [Exhibit C]), reads as follows:

21         I am 52 years old and suffer from xzema. In addition, I was severely
           injured when I was hit by a car and as a result I suffer from "chronic
22         and substantial pain" in my back, knees, etc., including hip … On 1-
           9-19 MRI taken show considerable damage to my lumbar region. My
23         condition significantly affects my daily activities. … However, there
           has been an irrevocable conflict – a breakdown in the relationship
24         between the NP and I that has caused a deliberate and chronic failure
           in the correct treatment and pain mgmt./medication for my maladies.
25         Equality, integrity, accountability, efficiency, and transparency
           guide CDCR decisions. The NP's folly has eroded my confidence in
26         her ability to convey that message. … [I] ask for your assistance to
           consult with a doctor to receive an alternative and effective pain
27         medication and Eucerin cream and Aveeno lotion. Xzema is
           extremely needless pain and suffering.

28

(Doc. 52-4 at 26, 28.) The institutional response, dated January 30, 2019, states the grievance was rejected because it involved a general allegation and was not made on an approved form. (*Id.* at 31.) Plaintiff was directed to "[d]escribe the specific complaint that relates to" his health care, asked to review the grievance because "there is no Nurse Practitioner (NP) at this institution," and advised to "use the new CDCR 602 HC and/or CDCR 602 HC A to describe" his specific complaint. (*Id.*) The response concludes as follows: "Take the necessary corrective action provided in this notice, and resubmit the health care grievance to the Health Care Grievance Office where you are housed within 30 calendar days." (*Id.*)

Defendants contend this grievance does not identify either Smith or Tortorice. UDF 42. Plaintiff complained of chronic and substantial back, hip, and knee pain, and a "'breakdown in the relationship'" between Plaintiff and a nurse practitioner that "prevented 'the correct treatment and pain [management]/medication" for his pain. UDF 42. Plaintiff wished to consult with a doctor regarding alternative pain medication and sought treatment for eczema. UDF 43. The grievance was rejected at the institutional level, stating the grievance contained a "general allegation" and that the institution did not employ a nurse practitioner. UDF 43. The rejection notice advised Plaintiff he would need to file a new health care grievance specifically describing his complaint. UDF 44. Finally, Defendants contend the grievance did not receive a merits-based response and Plaintiff did not submit it for headquarters' level review. UDF 45.

While pain management and medication were a subject of Plaintiff's grievance, neither Smith nor Tortorice is identified. Instead, Plaintiff complained about care provided by a nurse practitioner--a medical professional not employed at SCC. The Court finds this grievance did not sufficiently alert prison officials to his claims against Smith or Tortorice. *See Sapp*, 623 F.3d at 824. The record also indicates Plaintiff did not appeal to the headquarters level. *Jones*, 549 U.S. 211; *Woodford*, 548 U.S. at 88, 93. Therefore, the Court finds grievance 19000033 did not exhaust Plaintiff's administrative remedies concerning his claims against Smith or Tortorice.

19000040

This grievance, (*see* Doc. 52-4 at 33-38 [Exhibit D]), reads as follows:

3085. Direct evidence of deliberate indifference by the act's and

14

statement's by prison personal demonstrates an hostile attitude towards (inmates) me or my medical needs …. Please be informed that by separate letter and a copy of this appeal, I am sending to Prison Law Office and Rosen Bien Galvin + Gronfield as well as my own family to document I have asked for assistance to consult with a pain management doctor or one whom can give me adequate treatment or an alternative and effective pain medication or surgery or the treatment that help to make my pain bearable because as of now it's unbearable and needs immediate attention Dr. McKay stipulates there's nothing she can do and dr. Smith as well.

(Doc. 52-4 at 34.) The institutional response dated April 9, 2019, found no intervention was warranted. (Doc. 52-4 at 37.) Following recitation of the basis for that finding (*id*. at 37-38), in the concluding paragraph, the institutional response provides: "If you are dissatisfied with the Institutional Level Response, follow the instructions on the CDCR 602 HC …, and submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies" (*id.* at 38).

Defendants contend this grievance claimed deliberate indifference by "'Dr. McKay,'" who Plaintiff alleges advised him "there's nothing she can do and [Defendant] Smith as well,'" and it does not identify Defendant Tortorice. UDF 47. Plaintiff requests to see a pain management doctor, or alternatively, someone who could provide adequate treatment and effective pain medication or surgery to address his immediate pain. UDF 48. The institutional response indicated no intervention was warranted and advised Plaintiff to submit it for headquarters level review if he was dissatisfied. UDF 49. Plaintiff failed to do so. UDF 50.

While pain management was the subject of Plaintiff's grievance and it identified Defendant Smith, there is no evidence that Plaintiff appealed this institutional response to the headquarters level. *Jones*, 549 U.S. 211; *Woodford*, 548 U.S. at 88, 93. Therefore, the Court finds grievance 19000033 does not exhaust Plaintiff's administrative remedies concerning his claims against Smith or Tortorice.

20000229

This grievance, (*see* Doc. 52-4 at 73-85 [Exhibit H]), reads as follows:

My overly extreme [unbearable] foot pain is reason enough for me

15

1    to absolutely disagree with the doctor's diagnoses and the denial of
2    my A.D.A accommodations. I request to be seen by [a] foot specialist
     [physician] as soon as possible. It's imperative.

3    (Doc. 52-4 at 77; *see also id*. at 81-82 [RAP request & response].) The institutional response

4    dated September 1, 2020, indicates no intervention was warranted. (*Id*. at 79.) The basis for that

5    finding notes Plaintiff's disagreement with the RAP response, references requirements for durable

6    medical equipment and supplies, and states, "Dr. Tortorice reviewed the criteria for therapeutic

7    shoes of the Primary Care Guide to Foot Care with you. At this time you do not meet the criteria

8    for therapeutic shoes or for referral to a specialist." (*Id*. at 79-80.) The institutional level response

9    concludes by stating that if Plaintiff is dissatisfied, he should submit his grievance package for

10   headquarters review, and that such review constitutes exhaustion of his administrative remedies.

11   (*Id*. at 80.)

12        When appealing the institutional response, Plaintiff stated:

13        I explained in total why & how I'm in so much pain [and] met many
          of the requirements to be approved and was still denied. I believe it's
14        only [a] result of racial systemic bias a humane injustice due to being
          African American as well as an inmate. I'm being [stereotyped] for
15        a lying addict which is completely opposite of my plight. I'm only
          seeking relief to my unbearable pain. These doctors only seek to
16        [remedy] any kind of pain on any part of the body with [Ibuprofen],
          or naproxen or Tylenol which renders no relief at all. Already known
17        by physicians and told there's nothing that can be done but set an
          additional appointment for x ray which doesn't expose the problem
18        and should be sent to specialist and [given] an [MRI] and or
          [preferably] issued soft sole boots for start. Now because of their
19        carelessness I'm suffering [tremendously] with physical
          [excruciating] pain and mental anguish which puts me in [imminent]
20        danger to further physical damage was well as on emotional mental
          breakdown and pray with hope and begging for proper assistance.
21

22   (Doc. 52-4 at 78.) The headquarters level response of December 8, 2020, found no intervention

23   was necessary. (*Id*. at 74-76.) Specifically, the headquarters level response is based on Plaintiff's

24   enrollment in the Chronic Care Program, acknowledges his disagreement with the RAP ruling,

25   states that on August 14, 2020, Plaintiff's primary care provider determined therapeutic shoes and

26   a referral to podiatry were not medical necessary, and notes Plaintiff will continue to be

27   monitored and provided with care "as determined medically or clinically" by his primary care

28   provider. (*Id*. at 74-75.) The response concludes there was no indication Plaintiff had not been

1    provided with adequate medical care or access to care, and states the decision exhausted his

2    administrative remedies in that regard. (*Id.* at 75-76.)

3    　　　Defendants contend this grievance involves Plaintiff's complaints about a Reasonable

4    Accommodation Panel (RAP) decision denying his request for therapeutic shoes. UDF 28.

5    Plaintiff complained of unbearable foot pain, disagreed with a doctor's "'diagnoses and the denial

6    of [his] A.D.A. accommodations," and requested to be seen by a foot specialist. UDF 28. Neither

7    Smith nor Tortorice are identified in the grievance. UDF 28. The institutional response indicated

8    no intervention was warranted because Plaintiff did not meet the criteria for therapeutic shoes or

9    referral to a specialist. UDF 29. Defendants contend that while Plaintiff sought headquarters level

10   review regarding this grievance, that review "focused on Plaintiff's disagreement with the RAP's

11   decision, whether it was proper to deny Plaintiff's request for therapeutic shoes, and whether a

12   podiatry referral was medical necessary. The HCCAB did not have an understanding that Plaintiff

13   grieved any pain management decisions by Defendants." UDF 30 & 31.

14   　　　Although Plaintiff appealed grievance 20000229 to the headquarters level, the grievance

15   does not identify Smith or Tortorice and concerns a denial by the RAP panel to issue Plaintiff

16   therapeutic shoes. The second amended complaint alleges a "chronic pain medical condition of

17   [sciatic nerve] & spine damage." (Doc. 28 at 3.) *See, e.g.*, *Millare v. Murphy*, No. 2:20-cv-00451-

18   WBS-JDP (PC), 2021 WL 4355455, at *3 (E.D. Cal. Sept. 24, 2021) ("Plaintiff contends,

19   however, that the grievance exhausted his remedies because it stated that CDCR staff conspired to

20   interfere with his constitutional rights. But that statement is too vague to meet the level of detail

21   required for exhaustion"), adopted in full, 2021 WL 5015686 (E.D. Cal. Oct. 28, 2021), affirmed,

22   2023 WL 2584252 (9th Cir. 2023); *Davis v. Gibson*, No. 1:18-cv-00610-LJO-SAB (PC), 2019

23   WL 1865463, at *9 (E.D. Cal. Apr. 25, 2019) ("Plaintiff's unsubstantiated and conclusory

24   allegations that the administrative remedies were somehow 'unavailable' to him is insufficient to

25   excuse the mandated exhaustion requirement"). Here, Plaintiff's claims against the Defendants

26   involve their failure to provide adequate pain medication and a referral to a pain management

27   specialist. The reference to Defendant Tortorice in the institutional level response simply

28   identifies him as Plaintiff's primary care provider at that time. Accordingly, the Court finds that

17

1    although Plaintiff appealed grievance 20000229 to the highest level, it does not exhaust Plaintiff's

2    claims against Defendants Smith and Tortorice in this action.

3         21000593

4         This grievance, (*see* Doc. 52-4 at 95-104 [Exhibit J]), reads as follows:

> I was sent to an outside pain management Dr. and was not examined
> not even having my vitals taken and was only asked questions that
> the Dr. determined to rely on an out dated (M.R.I) and recommended
> physical therapy and an [epidural] shot that I've already been treated
> with that did not have a positive effect and he also said that me having
> [nerve] damage and my [retrolisthesis] was not reported and by this
> malpractice I'm requesting another opinion by another pain
> management specialist, due to the extreme pain that I experience
> daily is contrary to the analysis and it's biased and [a] deliberate
> indifference to my physical health and pain. It's also effecting my
> mental health. My condition is being disregarded because I'm an
> inmate in the California Department of Corrections & Rehabilitation
> and demand [adequate] medical treatment to help my pain
> manageable immediately. Please I'm begging due to the pain I'm
> experiencing is unbearable multiple parts of my body from the same
> problem I've been asking for help and [adequate] treatment for four
> year now to no avail. I'm reaching out again now to be medically
> treated for the severity of my painful condition. Please, I was sent to
> an outside Dr. in Manteca on November 3rd.

15   (Doc. 52-4 at 98, 102, capitalization corrected & punctuation added.) The institutional level

16   response determined no intervention was necessary, noting Plaintiff was "evaluated by Pain

17   Management and an Epidural Steroid Injection (ESI) was recommended," had "received an

18   Electromyogram by Pain Management and an ESI was recommended," and refused a December

19   23, 2021, appointment "for an ESI with Physiatry." (*Id*. at 96-97.) It further notes Plaintiff was

20   transferred to California State Prison, Corcoran on December 13, 2021, and that on December 31,

21   2021, when evaluated by Dr. Phi, Plaintiff stated he had "been taking ibuprofen and diclofenac

22   with some relief, but would like injection" and was "denied a recent refusal to pain management."

23   (*Id*. at 97.) In the concluding paragraph, the institutional response states: "If you are dissatisfied

24   with the Institutional Level Response, follow the instructions on the CDCR 602 HC …, and

25   submit the entire health care grievance package for headquarters' level review. The headquarters'

26   level review constitutes the final disposition on your health care grievance and exhausts your

27   administrative remedies." (*Id*.)

28        Defendants contend that in this grievance, Plaintiff complained about treatment provided

by an outside pain management specialist and sought a second opinion from another pain management specialist. UDF 52. The grievance does not identify Smith or Tortorice. UDF 52. There is no evidence that Plaintiff appealed this institutional response to the headquarters level. *Jones*, 549 U.S. 211; *Woodford*, 548 U.S. at 88, 93. The Court finds grievance 21000593 does not exhaust Plaintiff's administrative remedies concerning his claims against Smith and Tortorice.

## A. Defendants Have Met Their Initial Burden

Based upon the foregoing, the Court finds Defendants have met their initial burden of showing the existence of an available administrative remedy and Plaintiff's failure to exhaust his administrative remedies regarding his claims against Defendants Smith and Tortorice. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387; *Albino,* 747 F.3d at 1172.

## B. Plaintiff Has Failed to Meet His Burden of Production

Because Defendants have met their initial burden, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino,* 747 F.3d at 1172. Plaintiff has failed to do so.

Plaintiff's filings of September 20, 2024, do not rebut Defendants' evidence. First, in his single-page document titled "Motion to the Court to Set Trial Date to Oppose the Declaration of Howard E. Mosley to Prove Summary Judgement (Exhaustion)," Plaintiff simply offers a statement that he is moving "TO SUPPORT [HIS] U.S. CONSTITUTIONAL RIGHT CLAUSE TO DUE PROCESS AND TO REQUEST THE COURT TO PROCEED TO TRIAL TO ESTABLISH FACTS …." (Doc. 54.) There is no evidence establishing that the existing administrative remedies were unavailable to him.

Second, Plaintiff's next single-page document also asserts he has certain due process rights and makes a demand to "PRESENT THE PROOF OF EVIDENCE TO INSURE FACTS IN THE INTEREST OF JUSTICE." (Doc. 55.) Plaintiff fails to indicate what evidence he would offer to justify an evidentiary hearing, and he makes no showing that administrative remedies were unavailable to him. Finally, in a two-page filing titled "Plaintiff Response to Rand Warning Regarding Opposing Summary Judgement," Plaintiff states he "made a motion OPPOSING the

1   DISMISSAL OF CASE," and restates his request that the Court allow him "TO PROVE FACTS

2   ASSOCIATED TO CASE" and his rights to due process and a jury trial.

3       Plaintiff again fails to identify any evidence warranting an evidentiary hearing and makes

4   no showing or assertion that administrative remedies were unavailable to him. Plaintiff's filings

5   also fail to reference or challenge the declaration provided by S. Gates that supports Defendants'

6   summary judgment motion. The Gates declaration, not the declaration of Moseley, includes

7   copies of all grievances reviewed herein.

8       Plaintiff's filings of September 20, 2024, fail to overcome Defendants' evidence. Plaintiff

9   has not identified any misconduct by prison officials or presented any evidence regarding

10  unavailability of an administrative remedy. *See Sapp*, 623 F.3d at 823-24 (plaintiff bears burden

11  of demonstrating exception to exhaustion requirement based on prison officials' misconduct);

12  *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11,

13  1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence,

14  is insufficient to create a genuine issue of material fact"); *Atkins v. Rios*, No. 1:20-cv-00193-

15  ADA-BAK (GSA) (PC), 2022 WL 4280198, at *11 (E.D. Cal. Sept. 15, 2022) (finding "Plaintiff

16  has failed to identify any actions that Corcoran officials took that impeded his ability to exhaust

17  his administrative remedies"); adopted in full, 2022 WL 17542032 (E.D. Cal. Dec. 8, 2022).

18      In sum, Plaintiff has failed to "come forward with evidence to show that there is

19  something in his particular case that made the existing and generally available administrative

20  remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. This Court's review of the

21  evidence presented also failed to establish that an administrative remedy was unavailable to

22  Plaintiff. *Ross*, 578 U.S. at 643-44.

23              **C.  Summary of Findings**

24      In sum, Defendants met their initial burden to establish there is no genuine issue of

25  material fact. Plaintiff failed to set forth evidence showing the unavailability of an administrative

26  remedy or that his failure to exhaust administrative remedies should be excused. Therefore,

27  Defendants have met their ultimate burden to show Plaintiff failed to exhaust his administrative

28  remedies regarding his Eighth Amendment claims against Smith and Tortorice prior to filing suit.

Thus, this Court will recommend Defendants' motion for summary judgment be granted.

## V.    CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court **HEREBY RECOMMENDS**:

1. Defendants' motion for summary judgment regarding exhaustion (Doc. 52) be **GRANTED**;

2. This action be **DISMISSED**, without prejudice, for failure to exhaust administrative remedies; and

3. The Clerk of the Court be **DIRECTED** to enter judgment accordingly and to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   __**January 24, 2025**__          _____*/s/ Sheila K. Oberto*_____
                                         UNITED STATES MAGISTRATE JUDGE